**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:11-CR-0077-02 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| HENRY THOMPSON | : | |

**MEMORANDUM**

Presently before the court is a motion to dismiss the indictment (Doc. 232), filed *pro se* by defendant Henry Thompson ("Thompson") on September 24, 2012.[1] Thompson makes 13 separate allegations in his motion, which may be organized into 5 categories: (1) grand jury violations; (2) prosecutorial misconduct; (3) violation of Thompson's speedy trial rights pursuant to 18 U.S.C. § 3161; (4) deprivation of a competency hearing; and (5) discrimination and selective prosecution. For the reasons set forth below, the court will deny the motion.

**I.    Factual Background**

Thompson was one of several suspects identified during a drug trafficking investigation conducted by the Drug Enforcement Administration ("DEA") and local authorities. (Doc. 248, at 5). Following a significant investigation, Thompson was arrested on February 25, 2011.

---

[1] The court does not typically entertain *pro se* motions when defendant is represented by counsel. See United States v. D'Amario, 268 Fed. App'x 179, 180 (3d Cir. 2008) ("The Constitution does not confer a right to proceed simultaneously by counsel and pro se . . . ."); see also United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006). However, given the unusual rate of attrition of Thompson's counsel, see Docs. 67, 131, 210, 265, the court has elected to address the instant motion.

On March 9, 2011, a grand jury indicted Thompson, along with several co-defendants, for unlawfully distributing and possessing with the intent to distribute at least five kilograms of cocaine hydrochloride and at least 280 grams of cocaine base, or "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. 10). Thompson was also indicted for criminal conspiracy to engage in this conduct, in violation of 21 U.S.C. § 846. (Id.) Thompson pleaded not guilty on March 10, 2011, and was detained without bail pending trial. (Doc. 25).

On September 24, 2012, Thompson filed the instant *pro se* motion to dismiss the indictment. The motion is fully briefed and ripe for disposition.

## II. __Discussion__

### A. __Grand Jury Violations__

Thompson first contests the makeup of the grand jury as well as the conduct of the prosecutor and agents during grand jury proceedings.[2] More specifically, Thompson contests the selection of the grand jury foreperson. Thompson asserts that the foreperson is not the same race or class as Thompson because she allegedly

---

[2] Thompson requests a number of documents from the court to support his argument, including the "Grand Jury Concurrence Form," "Grand Jury Transcripts" and the "Grand Jury section list pursuant to Section 1867." (Doc. 232, at 6). Thompson alleges that he is entitled to these documents upon filing a motion to dismiss the indictment. It is unclear under what provision Thompson feels entitled to such documents. Under 28 U.S.C. § 1867(d), which regulates challenges to grand jury selection procedures, a moving party is only entitled to relevant grand jury records and papers not otherwise publicly available if the party files a motion "containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." The court finds that Thompson's motion fails to meet this requirement.

lives on Sunflower Lane in Palmyra. (Doc. 232, at 1). Thompson further alleges that the grand jury is not racially neutral because minorities are under-represented on the grand jury in comparison to their proportion of the total population. (Id.)

It is well established that potential discrimination in the selection of a *federal* grand jury foreperson does not warrant dismissal of an indictment. <u>Hobby v. United States</u>, 468 U.S. 339, 343-46 (1984). This is because the role of the federal grand jury foreperson, as contrasted with the foreperson of certain state grand juries, is essentially clerical in nature. <u>Id.</u> Thus, Thompson's motion to dismiss the indictment is unavailing. It is irrelevant whether the grand jury foreperson for his proceedings is of a different race or whether discrimination played a role in her appointment.

However, race related discrimination in the selection of the grand jury as a whole is unconstitutional under the Fifth Amendment Due Process Clause. <u>See Castaneda v. Partida</u>, 430 U.S. 482 (1977) (addressing race related discrimination in grand jury selection under the Fourteenth Amendment Equal Protection Clause); <u>Weinberger v. Wiesenfeld</u>, 420 U.S. 636, 638 n. 2 (1975) (holding that equal protection claims under the Fifth Amendment Due Process Clause are examined in the same manner as equal protection claims under the Fourteenth Amendment). To establish a prima facie case of discrimination, a defendant must show the following: (1) that the group to which he belongs is a "recognizable, distinct class" subject to different treatment; (2) the group was statistically under-represented in

the grand jury over a significant amount of time; and (3) the selection procedure is susceptible to abuse or is not racially neutral. <u>Castaneda</u>, 430 U.S. at 494-95.

Thompson fails to provide any type of statistical showing regarding the representation of African-Americans in Middle District grand juries over any period of time. Moreover, there is no indication that the current grand jury selection procedure is susceptible to abuse. In accordance with the Jury Selection and Service Act, 28 U.S.C. § 1861 *et seq.*, the Middle District of Pennsylvania has adopted "The Juror Selection Plan of the United States District Court for the Middle District of Pennsylvania" ("the Plan"). The provisions of the Plan apply to all divisions in the district. (Plan § 202). Pursuant to the Plan, grand jurors are selected at random from voter registration lists of all the counties within the relevant division. (Id. § 401). Thereafter, individuals randomly selected from the voter registration list are placed in a master jury wheel for that division. (Id. § 501). Names from the master jury wheel are drawn randomly to fill the qualified jury wheel. (Id. § 502). The Clerk of the Court sends a juror qualification questionnaire form to every person whose name is so drawn. (Id. § 504). A juror must be a United States citizen over 18 years old who has resided for at least one year within the district and is able to read, write, speak, and understand the English language. (Id. § 602). The juror must not have a mental or physical infirmity that renders him or her incapable of satisfactory jury service. (Id.) Finally, the juror must not have a pending felony charge or felony conviction. (Id.) Thompson makes only conclusory allegations of discrimination, and he fails to provide any specifics as to how the

4

Middle District juror selection system is not race neutral. Hence, the court finds his claim meritless.

Relatedly, Thompson also avers that the prosecutor made false and misleading statements during the grand jury proceedings and that agents improperly testified in tandem during the grand jury proceedings. Although Thompson attaches two of his own "affidavits" to the motion, he fails to set forth any factual averments delineating precisely what he believes occurred in grand jury proceedings and the manner in which those events adversely affected his constitutional rights. Bald, conclusory allegations are simply insufficient. Accordingly, this aspect of Thompson's motion must be denied.

### B. Prosecutorial Misconduct

Thompson also alleges prosecutorial misconduct and vindictive prosecution. Thompson asserts that the prosecutor threatened to increase or supersede Thompson's charges if he refused to plead guilty and go to trial. Thompson also avers that the prosecutor has interfered with Thompson's relationship with his counsel and has sought to collaborate with defense counsel to build a case against Thompson and his co-defendants.

It is well established that the Constitution does not prohibit a prosecutor from threatening, during plea negotiations, to bring additional charges against a defendant should he or she refuse to plead guilty. Bordenkircher v. Hayes, 434 U.S. 357, 364-65 (1978). Thus, even if there is evidence of such a threat in the case *sub judice*, which there is not, it would not constitute vindictive prosecution.

Furthermore, this claim suffers from the same infirmities as Thompson's other claims, to wit: the complete absence of specifics. Thompson simply relies on his own unsubstantiated assertions and conclusions and fails to provide any specific facts regarding the government's alleged improper collaboration with defense counsel. The court notes that this issue has been the subject of several proceedings in the instant matter (see Docs. 94, 129, 156, 207) and there is simply no evidence of collusion. Hence, this claim is denied.

### C.    Speedy Trial Rights

Thompson also alleges that his right to a speedy trial has been violated. He does not provide any basis or argument to support this claim. Pursuant to the Speedy Trial Act, a defendant shall be brought to trial within seventy (70) days of the filing of the indictment or the date the defendant appeared before a judicial officer of the court in which the charges are pending, whichever date is later. See 18 U.S.C. § 3161(c)(1). Any delay "resulting from other proceedings concerning the defendant" are excluded in computing the time within which the trial must commence. Section 3161(h)(1). This exclusion includes, but is not limited to, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," and any "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant." Sections 3161(h)(1)(A), (D). Moreover, delays resulting from motions for continuances are excludable "if the judge granted such continuance on the basis of his findings that the ends of

6

justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section § 3161(h)(7)(A).

In the case *sub judice*, the indictment was filed on March 9, 2011, and Thompson appeared before a judicial officer of this court on March 10, 2011. Thompson filed numerous pretrial motions, including three suppression motions which required an evidentiary hearing as well as supplementary briefing. (See, *e.g.*, Doc. 106, 107, 108, 144, 145, 238, 239). Thompson also filed numerous motions to continue trial which the court granted based on a finding that the ends of justice outweighed the interest in a speedy trial. (See, *e.g.*, Doc. 53, 55, 58, 59, 76, 77, 99, 103, 110, 115). Furthermore, upon motion of defense counsel, the court ordered an evaluation of Thompson's competency to stand trial. (See Docs. 166, 168). Moreover, significant delay has resulted from the need for hearings on Thompson's numerous motions to remove counsel as well as his attorneys' motions to withdraw as counsel. (See, *e.g.*, Docs. 65, 68, 78, 94, 97, 128, 129, 131, 151, 156, 197, 207, 210, 262). The delay in the commencement of Thompson's trial is the result of his pre-trial motions, his motions for continuances, his competency evaluation, and other proceedings concerning him. All of this time is excluded from the speedy trial calculation, and there has been no violation of Thompson's speedy trial rights.

**D.    Competency Hearing**

Next, Thompson claims that his due process rights were violated because he was "deprived of a hearing to determine by preponderance of the evidence that the defendant has any history of mental disability or that he is incompetent to stand

trial." (Doc. 232, at 3). Either party may file a motion for a hearing to determine the mental competency of the defendant. 18 U.S.C. § 4241(a). The court shall grant the motion for the hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent" to properly engage in the proceedings. Id. Prior to the date of the hearing, the court may order the defendant to undergo a psychiatric or psychological examination. Section 4241(b).

Thompson's counsel filed a motion to determine Thompson's competency on March 9, 2012. (Doc. 166). The court responded by ordering a psychiatric or psychological competency examination and evaluation of the defendant. (Doc. 168). Upon review of the submitted competency evaluation, which concluded that Thompson was competent to stand trial, the court determined that a further hearing on Thompson's competency was not required. (Doc. 206). See United States v. Downs, 123 F.3d 637 (7th Cir. 1997) (finding that § 4241 does not require a competency hearing whenever a psychiatric examination has been ordered but only requires a competency hearing when there is reasonable cause to believe defendant suffers from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense); see also United States v. Denkins, 367 F.3d 537, 546 (6th Cir. 2004) ("We know of no authority . . . for the proposition that § 4241 mandates a hearing even when there is no prospect of meeting the statutory standard of incompetency."); United States v. Lebron, 76 F.3d 29, 32 (1st Cir. 1996) ("If a psychiatrist has

determined that a defendant is competent, a court is not required to hold a further evidentiary hearing absent extenuating circumstances."). Thompson does not provide any basis for the court to depart from its earlier decision. Thompson's due process rights were not violated.

### E. Selective Prosecution

Thompson further claims that the court must dismiss the indictment because the government routinely engages in selective prosecution against African-Americans accused of offenses involving crack cocaine. Thompson contends that he has conducted a partial investigation in Perry County, Cumberland County, Dauphin County, Adams County, and Franklin County, and concluded that "mostly all alleged suspects involved in Crack Cocaine offenses in 841,846 indictments has [sic] been predominantly African American & [sic] Hispanics." (Doc. 232, at 3). Thompson avers that he is entitled to discovery on this claim, including documents and the testimony of expert witnesses, to show that similarly situated Caucasians have not been prosecuted or have obtained lesser penalties for offenses involving crack cocaine. (Id.)

The Due Process Clause of the Fifth Amendment mandates that a prosecution may not be based on a suspect's race, religion, or other unjustifiable categorization. United States v. Armstrong, 517 U.S. 456, 464 (1996). To establish a selective prosecution claim, the defendant must present "clear evidence" that the government's prosecutorial policy has a "discriminatory effect" and is "motivated by a discriminatory purpose." Id. at 465 (quoting Wayte v. United States, 470 U.S.

598, 608 (1985)).  To establish a discriminatory effect based on race, the defendant must show that the government has not prosecuted "similarly situated individuals of a different race."  <u>Id.</u> at 457.

A defendant must also make a substantial showing to obtain discovery in support of his selective prosecution claim.  This showing is itself a "significant barrier to the litigation of insubstantial claims."  <u>Id.</u> at 464.  Federal Rule of Criminal Procedure 16, which regulates discovery in criminal cases, does not authorize defendants to examine government documents in preparation for selective-prosecution claims.  <u>Id.</u> at 463.  Instead, the defendant must provide a "credible showing" that the government treated similarly situated defendants of another race differently.  <u>Id.</u> at 470.

Thompson is not entitled to further discovery because he has failed to present a "credible showing" that the government treated similarly situated Caucasian defendants differently.  In support of his claim, Thompson relies entirely on his own affidavit, which broadly claims that Thompson has done a "vigorous study" of "various facilities" and has discovered "unanimous facts" that Caucasians suspected of crack cocaine offenses are treated differently.  (Doc. 232, at 4).  Thompson does not provide the court with specific results of his study, only conclusory and self-serving observations.  Thus, he is unable to establish that the government's prosecutorial policy has a discriminatory effect and his selective prosecution claim is without merit.

### III.    <u>Conclusion</u>

For the foregoing reasons, the court will deny Thompson's *pro se* motion to dismiss the indictment (Doc. 232).  An appropriate order follows.

   <u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:    March 1, 2013

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-0077-02** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **HENRY THOMPSON** | : | |

## <u>ORDER</u>

AND NOW, this 1st day of March, 2013, upon consideration of the motion to dismiss the indictment (Doc. 232), filed *pro se* by defendant Henry Thompson ("Thompson") on September 24, 2012, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to dismiss the indictment (Doc. 232) is DENIED.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge